NOT FOR PUBLICATION                                      [Dkt. Ent. 65]

```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
                   CAMDEN VICINAGE
```

| | |
|---|---|
| SHAWN SORRELL and WANDA SORRELL,<br><br>    Plaintiffs,<br><br>        v.<br><br>TROPICANA ATLANTIC CITY CORP.; SECURITY GUARD ANDERSON; SECURITY GUARD DUNCAN; JOHN DOES 1-10,<br><br>    Defendants. | Civil Action No. 12-02369<br><br>OPINION |

Appearances

James R. Birchmeier
Powell, Birchmeier & Powell
1891 State Highway 50, PO Box 582
Tuckahoe, NJ 08250
    Attorney for Plaintiff

Domenic B. Sanginiti, Jr.
Alyson Tomljenovic
Cooper Levenson
1125 Atlantic Avenue, Third Floor
Atlantic City, NJ 08401
    Attorneys for Defendants

BUMB, United States District Judge:

    This matter comes before the Court upon a motion for summary judgment filed by Tropicana Atlantic City Corp. d/b/a Tropicana Casino and Resort (the "Tropicana") and Security Guard James Duncan ("Duncan" and, collectively, the "Defendants").

This matter stems from Plaintiff Shawn Sorrell's eviction from the Tropicana on September 24, 2010 at which time he claims to have been beaten by Duncan and another security guard, Kier Anderson ("Anderson").[1] Plaintiffs Shawn and Wanda Sorrell commenced this action against Tropicana, Duncan, and several unnamed defendants, asserting causes of action for assault and battery, false imprisonment, loss of consortium, intentional infliction of emotional distress, and negligent infliction of emotional distress. For the reasons set forth below, the Court finds it necessary to deny Defendants' motion.

On September 24, 2010, Plaintiff Shawn Sorrell (hereinafter, "Plaintiff") visited Tropicana to play "dice." (Defs.' Statement of Material Facts ("DSMF") ¶ 2; Pl.'s Resp. ¶ 2.) Plaintiff consumed "a few drinks" and was then approached by a white security officer who Plaintiff alleged handcuffed him. (DSMF ¶ 3; Pl.'s Resp. ¶ 3.) Plaintiff does not recall if the security officer informed Plaintiff that he had consumed too many drinks prior to handcuffing him. (DSMF ¶ 4; Pl.'s Resp. ¶ 4.) Plaintiff, an African American, contends that this "white guy" took him up to a room and left with Duncan and Anderson. (Ex. B, Dkt. Ent. 65-3, at 108:1-109:5.) Plaintiff testified that an "African guy" pulled up Plaintiff's shirt and Anderson

---

[1] Although Anderson was served with a copy of the Complaint (Dkt. Ent. 23), he has not entered an appearance.

2

punched Plaintiff in his right-side rib case while wearing brass knuckles. (Id. at 110:7-19.) The "African guy" took Plaintiff out of the room and sat him in the hallway for five minutes before Duncan and Anderson escorted Plaintiff out of the casino. (Id. 111:22-25.) At that point, they threw him outside on the ground and injured Plaintiff's back and head. (Id. at 112:5-10.) After he got up, he ran back to the casino to ask the guards why they punched him and he states that they came back out and pushed him down "real hard" and then when he stood up, Plaintiff took a swing at one of the guards. (Id. at 114:23-115:6.) At that point, they took Plaintiff upstairs and handcuffed him to a pole before eventually releasing him. (Id. at 115:8-20.)

Defendants dispute Plaintiff's account of events. According to a Tropicana Incident Report, Anderson was approached by a pit boss from the casino floor regarding Plaintiff, who was intoxicated. (Ex. E, Dkt. Ent. 65-6.) According to Defendants, Anderson and Duncan escorted Plaintiff to the South Tower Drive, where he became "very uncooperative, cursing, and swing[ing] his arms towards [] Anderson." (Ex. E.) Duncan testified that he remembered Plaintiff stating that he "was going to stick Anderson, which means pull out a knife and stab him." (Ex. F, Dkt. Ent. 65-7 at 31:15-18.) Plaintiff disputes that he said this. (Ex. A, Dkt. Ent. 67 at 146:23-24.) At that juncture,

3

Duncan and Anderson placed Plaintiff in handcuffs and escorted him to the security office. (See Ex. C.) He was later released.

Defendants seek summary judgment as to all claims. Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Moreover, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (citations omitted). A court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S.

373, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In support of their motion, Defendants submit CCTV video that they contend conclusively demonstrates that Plaintiff's claims are false. The video shows Plaintiff being escorted out of the casino by two security officers, but then the video cuts out and when it comes back on Plaintiff is lying on the ground. The video further shows the guards returning inside while Plaintiff gets up and approaches the casino door. He appears to be yelling and waving his arms, but the video is not accompanied by any audio. At some point, the guards come back outside. Plaintiff removes his shirt in what seems to be preparation to fight the guards. Shortly thereafter, Plaintiff aggressively moves toward the guards, and a scuffle ensues in which the guards take Plaintiff to the ground. Then, they place him in handcuffs and the video clips show their progression through the casino to the security office where Plaintiff is handcuffed to a bench. No further incidents ensue and Plaintiff is then escorted out of the room.

The Court is tempted to grant summary judgment in favor of Defendants as much of Plaintiff's version of the story is

5

contradictory and implausible, at best, if not perjurious. For example, Plaintiff testified that he was not intoxicated but conceded that he had some beer and Hennessey. He also testified that he was not acting in a belligerent manner or causing a scene, but the video footage suggests that Plaintiff was the aggressor in the interaction with the security guards. Plaintiff further testified that Anderson broke all of his ribs on the right side of his body,[2] but the video shows him later aggressively approaching the guards outside, waving his arms, jabbing his fingers in the guards' direction, pulling his shirt off over his head and flinging it to the ground behind him, and jumping up and down without difficulty – impressive feats for a man with broken ribs and the other injuries that Plaintiff claims he suffered. Moreover, Plaintiff testified that he became paralyzed when the guards threw him to the ground outside of the casino, but the video shows Plaintiff jumping up without difficulty within seconds. When this latter discrepancy was pointed out to Plaintiff during his deposition, he responded that the video was falsified.[3]

---

[2] Interestingly, Plaintiff submitted no medical records supporting his claim to broken ribs.

[3] There are many other contradictions in Plaintiff's several recitations of his version of events. For example, in letters apparently written by Plaintiff and sent to the casino, Plaintiff contends that the guards grabbed him and took him outside with no shirt. (Ex. D.) When deposed, Plaintiff stated the guards removed his shirt but then admitted he removed his

6

Indeed, Plaintiff has consistently asserted that evidence in this matter has been falsified or other individuals are lying. (See generally Ex. B.) When the State Police investigated Plaintiff's complaints against Duncan and Anderson, it determined that "CCTV shows no evidence of an assault," and pointed to the "discrepancies in Sorrell's account of the incident." (DSMF ¶¶ 8-13 (quoting Ex. D).) Plaintiff contends that this report has been falsified, as has the video surveillance footage of the night in question.

Unfortunately, the video does not show the interaction that occurred on the casino floor prior to Plaintiff being escorted from the building. It is during that time that Plaintiff contends he was taken to a room and beaten by Anderson, who broke Plaintiff's ribs. The video also does not show the seconds in which the guards, according to Plaintiff, threw him to the ground outside the casino, further injuring him. Thus, Plaintiffs oppose summary judgment on grounds that the video is incomplete and/or altered, and does not contain audio. Moreover, in light of the different versions of events, it is up to the jury to determine which version, if any, actually occurred.

This Court agrees -- "[Plaintiff's] allegations, none of which are either established or definitively refuted by the

---

own shirt. (Ex. B.) The video clearly shows Plaintiff removing his own shirt.

7

[MVR] videotapes, present issues of material fact that must be resolved by a jury." Green v. New Jersey State Police, 246 F. App'x 158, 161 (3d Cir. 2007); see Patterson v. City of Wildwood, 354 F. App'x 695 (3d Cir. 2009) (finding that a jury might conclude that a videotape was inconsistent with or give rise to different inferences where the videotape in question did not portray the actual incident); Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (stating that where a decedent was unable to testify that the court may not accept self-serving account by officer but must also look to circumstantial evidence that, if believed, could discredit the officer's story). As such, while the Court has grave concerns regarding the veracity and plausibility of Plaintiff's account, to grant summary judgment where the video evidence provided is incomplete would be in error.[4]

In another matter that similarly rested upon the video evidence, this Court granted summary judgment in favor of the defendant as it found that, based upon the video evidence, "no reasonable jury could find that Plaintiff was unconscious while

---

[4] This is not to say, however, that this Court will not hesitate to refer this matter to the appropriate law enforcement authorities if the evidence adduced at trial demonstrates obstruction of justice and/or perpetration of a fraud upon this Court. This does not appear to be the first time that Plaintiff has been warned. According to Defendants, Plaintiff was charged with providing a false report to authorities, but the disposition of this charge, if any, is unknown. (See Ex. D.)

on the ground." See Patterson v. Wildwood, No. 06-4334, 2008 WL 2345372, at *4 (D.N.J. June 3, 2008). On appeal, the Third Circuit disagreed on grounds that the video was incomplete and therefore did not clearly contradict the plaintiff's account:

> The limited exception set forth by the Supreme Court in Scott v. Harris does not apply in the instant fact pattern. Unlike the videotape relied upon by the Supreme Court in Scott, which depicted the actual incident, the videotape in this case did not capture the incident and could not therefore contradict, let alone "blatantly contradict," the record as to what occurred. While the jury might conclude that the videotape was inconsistent with, or gave rise to different inferences regarding, Patterson's version of events, the videotape in this case does not portray the actual incident; it cannot, and does not, "blatantly contradict" Patterson's version of events as the video did in Scott v. Harris."

Patterson, 354 F. App'x at 697-98. Thus, the Circuit remanded the matter for a jury trial.[5]

For similar reasons, the Court is constrained to hold that summary judgment should be denied because the video evidence is incomplete.

Date: December 19, 2014

                                      s/Renée Marie Bumb
                                      RENÉE MARIE BUMB
                                      UNITED STATES DISTRICT JUDGE

---

[5] As it turned out, the jury subsequently rendered a verdict in favor of the defendant and against the plaintiff for no cause of action. Patterson v. Howard, No. 06-4334, Dkt. Ent. 40.